J. H. GUILD CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8741.  Promulgated May 1, 1928.

*Luther F. Speer, Esq.*, and *Fred A. Woodis, Esq.*, for the petitioner.

*Dwight H. Green, Esq.*, for the respondent.

OPINION.

Love: The petitioner's first contention is that the· Commissioner erred in determining that the intangibles, having a value of more than $160,000, acquired by it in April, 1918, under the circumstances and conditions set forth in the findings of fact, may be included in invested capital for the years in question only to the extent permitted by section 326 (a) (5) of the Acts of 1918 and 1921,[1] which, with respect to petitioner, limits the amount to $43,750 or 25 per cent of the par value of the total stock outstanding at the beginning of the taxable year 1918.

In support of this contention the petitioner takes the position (1) that J. H. Guild Co., the partnership in existence from January 25, 1917, to April 12, 1918, or thereabout, was merely a device to carry on the business, having acquired the assets for the sum of $175,000 which, it held, pending the organization of the corporation, J. H. Guild Co., Inc., petitioner herein, and (2) that the surrender of the receiver's receipts which were given to the members of the predecessor partnership for amounts paid in at the time of acquisition of the business to the corporation in exchange for stock amounted to the payment of cash for the stock and, consequently, the full amount thereof should be included in invested capital pursuant to the provisions of section 326 (a) (1) of the 1918 and 1921 Acts.[2]

The first point, that the partnership was merely a device to carry on the business until incorporated, seems, in our opinion, to be immaterial and, even if conceded to be true, has no bearing on the question presented.

---

[1] Sec. 326. (a) That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section) :
* * * * * * *
(5) Intangible property bona fide paid in for stock or shares on or after March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year, whichever is lowest: *Provided,* That in no case shall the total amount included under paragraphs (4) and (5) exceed in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year ; * * *

[2] Sec. 326. (a) That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section) :
(1) Actual cash bona fide paid in for stock or shares.

Assuming that the members of the partnership intended to incorporate (a fact which, in our opinion, the record does not bear out) we are unable to say that that intent makes it necessary to consider the partnership and the corporation as one and the same, a theory advanced by petitioner in urging that the partnership was only an intermediate step. It is clear that the business conducted by the partnership was entirely separate and distinct from that conducted by the corporation. The corporate entity stands by itself, having come into existence on or about April 1, 1918, and there are no special circumstances whereby the intention of the members of the partnership to incorporate can be imputed to the corporation in such a manner as to make the acts of the partners the acts of the corporation. Obviously, therefore, it can not be said that the purchase for cash of the assets, tangible and intangible, of the J. H. Guild Co. by the partnership on January 25, 1917, constituted a purchase of the same assets for cash by the corporation. There are other apparent fallacies connected with such reasoning which we do not deem necessary to point out.

The second point, that the surrender to the corporation of the receiver's receipts by the members of the predecessor partnership in exchange for stock amounted to payment of cash for stock, is not, in our opinion, tenable.

In the first place, it is obvious that the receipts were not cash and did not purport to represent cash. Quite the contrary, the receipts were merely evidence that the respective amounts had been contributed to the purchase of the assets by the partnership and, at most, they constituted evidence of the holder's distributive share in the partnership assets. Consequently, for this reason, if for no other reason, the surrender thereof to the corporation did not constitute a cash payment for stock.

However, it might be well to point out that, in taking the position under consideration, the petitioner presupposes that the corporation would, after the surrender of the receipts, have purchased the assets with those receipts, which it contends represented cash. The record warrants no such supposition or assumption. In fact, such procedure was not followed. The partnership, by proper legal form, with its members as subscribers thereto, conveyed the assets to the corporation prior to the surrender of the receipts. Thereafter, the partnership having no assets, the subsequent surrender of the receipts was a useless and needless formality.

The petitioner having acquired the assets in question in exchange for stock, the provisions of section 326 (a) (5) of the 1918 and 1921 Acts clearly apply unless, as alleged in its petition, the provisions

of section 331 [3] of the Revenue Acts of 1918 and 1921 permit the inclusion of the assets at the cost to the predecessor.

The petitioner in its allegations of error alleges, among other things, that, having acquired the assets in question from a predecessor partnership, the provisions of section 331 of the Revenue Acts of 1918 and 1921, *supra*, permit the inclusion of those assets in invested capital at the cost of acquisition to the partnership. In its brief, petitioner did not refer to or discuss this allegation of error. The Commissioner, however, discusses the contention at some length. He denies that, by reason of section 331 of the Acts of 1918 and 1921, the petitioner is entitled to include the intangible assets in invested capital at the cost to the partnership, which was $161,526. On this point we agree with the Commissioner.

The record discloses that an interest or control of 50 per cent or more remained in the same persons formerly conducting the business of J. H. Guild Co., a partnership. Clearly, therefore, petitioner comes within the provisions of section 331 of the 1918 and 1921 Acts.

This section of the two Acts provides a method of determining the value of assets transferred or received from a previous owner in the reorganization, consolidation or change of ownership of a trade or business, or a change of ownership of property after March 3, 1917. The purpose of the section was to prevent the inclusion in invested capital of unrealized appreciation of assets. It established a maximum invested capital in such cases, and not a minimum. Section 331 of the 1918 and 1921 Acts does not, in our opinion, nullify or amplify section 326 (a) (5) of the same Acts. Where section 331 applies to the transfer of intangible assets from a previous owner, not a corporation, to a corporation, the value of the intangible assets transferred may be taken at their cost to the previous owner at the time acquired, with proper allowance for depreciation, impairment, betterment or development. However, such value, in determining the amount thereof that may be used for invested capital purposes, must be applied in accordance with the provisions of section 326 (a) (5) of the respective Acts. Thus, it seems clear, that while section 331 of the 1918 and 1921 Acts does not nullify or amplify section 326

---

[3] SEC. 331. In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received : *Provided,* That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation.

(a) (5) of the same Acts, an amount otherwise includable in invested capital under the provisions of section 331 may be limited by section 326 (a) (5).

We, therefore, approve the Commissioner's action taken with respect to petitioner's invested capital for the years in question.

As an alternative assignment of error, petitioner alleges that if the Commissioner's action in applying to its intangibles section 326 (a) (5) of the 1918 and 1921 Acts is approved, then it is entitled to have its profits taxes for the years in question computed under section 328 of the Revenue Acts of 1918 and 1921.

Petitioner was using in its business intangible assets having a value of more than $160,000 which, because of the manner of its organization, can be included in its invested capital for 1920 and 1921 only to the extent of $43,750. It is urged that by reason of the exclusion of this large amount of valuable intangible assets an abnormal condition affecting its capital arises within the meaning of section 327 of the Revenue Acts of 1918 and 1921.[4]

The Commissioner takes the position that the application of section 326 (a) (5) of the pertinent Acts to the intangible assets acquired by petitioner can not produce an abnormality contemplated by the statute and in this respect he relies on the Board's decision in *Morris & Co.*, 1 B. T. A. 704, where we stated:

The corporation was the result of a reorganization of a business carried on prior to its organization, and, under section 331 of the statute, the invested capital is no greater than that of the partnership. The good will was something which had grown with the business, and not something which the owners had ventured in the enterprise. Since it was not paid for or invested, it was not a factor in determining excess profits. Thus it was purposely excluded from invested capital, and its exclusion must be regarded as the normal application of the statute. It can not be consistently said that the statute excludes the item from invested capital and at the same time treats such exclusion as so abnormal as to be the ground for relief by special assessment.

It will be observed, however, that, in the instant case, the amount of intangible assets excluded was of recognized and substantial value.

---

[4] SEC. 327. That in the following cases the tax shall be determined as provided in section 328:

\* \* \* \* \* \* \*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax as determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

The intangibles were purchased in a bona fide sale for $161,526 and as such represented an investment in the business. In an enterprise similar to petitioner's, which, by the proper method and form of organization, is able to include in invested capital intangibles purchased for cash, a fair return thereon is a factor in determining the excess-profits tax. But, the petitioner, merely by reason of corporate organization, is precluded from including a large amount of valuable intangibles in its invested capital although such intangibles represent a bona fide investment in the business. The intangibles excluded, both in amount and in comparison with other assets used in producing income, are very substantial. We believe, therefore, that petitioner has established that an abnormal condition affecting capital, as provided in section 327 of the 1918 and 1921 Acts, *supra*, existed during the years in question.

Accordingly, the petitioner is entitled to a comparison with representative concerns for the purpose of determining whether such a comparison will result in any relief. *J. M. and M. S. Browning Co.*, 6 B. T. A. 914; *Cushman Chuck Co.*, 8 B. T. A. 148.

Reviewed by the Board.

*Further proceedings will be had under Rule 62.*